**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

TERESA C.,[1]

      Plaintiff,

           v.                         CIVIL NO. 3:19cv462

ANDREW M. SAUL,[2]
Commissioner of Social Security,

      Defendant.

**REPORT AND RECOMMENDATION**

Teresa C. ("Plaintiff"), fifty-nine years old at the time of this Report and Recommendation, has a high school education and previously worked as a fresh food manager at Wawa and as a shift manager at Sheetz. (R. at 17-18.) Plaintiff suffers from degenerative disc disease, chronic obstructive pulmonary disease ("COPD"), obstructive sleep apnea, osteoarthritis, diabetes, obesity, hypertension, hyperlipidemia, anxiety, depression and carpal tunnel syndrome. (R. at 13.)

On June 10, 2015, Plaintiff applied for disability insurance benefits ("DIB") under the Social Security Act (the "Act"). (R. at 75.) After Plaintiff's application was denied, and after exhausting her administrative remedies, Plaintiff now seeks review of the Administrative Law Judge's ("ALJ") decision. This matter now comes before the Court for a Report and

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] On June 4, 2019, the United States Senate confirmed Andrew M. Saul to a six-year term as the Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), Commissioner Saul should be substituted for former Acting Commissioner Nancy A. Berryhill as the defendant in this matter.

Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on the parties' cross motions for summary judgment, rendering the matter ripe for review.[3]

Plaintiff argues that the ALJ erred in her finding that Plaintiff is "not disabled." First, Plaintiff argues that the ALJ erred in finding that Plaintiff could perform her past relevant work as it is generally performed in the national economy. (Pl.'s Brief in Support of Pl.'s Mot. For Summ. J. at 3, ECF No. 15 ("Pl.'s Mem.").) Second, Plaintiff contends that the ALJ erred in finding that Plaintiff's skills were transferrable to another occupation that existed in significant numbers in the national economy. (Pl.'s Mem. at 4.) Finally, Plaintiff argues that the ALJ was not properly appointed under the Constitution and therefore, lacked legal authority to hear and decide the case. (Pl.'s Mem. at 7.)

For the reasons set forth below, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 14) be GRANTED, that Defendant's Motion for Summary Judgment (ECF No. 16) be DENIED and the final decision of the Commissioner of Social Security be VACATED and REMANDED pursuant to the fourth sentence of 42 U.S.C. § 405(g).[4]

## I. PROCEDURAL HISTORY

On June 10, 2015, Plaintiff filed for DIB, alleging disability due to COPD, asthma, diabetes, high blood pressure, sleep apnea, high cholesterol, anxiety, depression and arthritis, with

---

[3]   The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and financial account numbers from this Report and Recommendation, and will further restrict its discussion of Plaintiff's medical information only to the extent necessary to properly analyze the case.

[4]   Because the Court recommends that this case should be remanded on other grounds, Plaintiff's constitutional challenge will not be addressed. *See Norfolk S. Ry. Co. v. City of Alexandria*, 608 F.3d 150, 156-57 (4th Cir. 2010) ("[T]he principle of constitutional avoidance . . . requires the federal courts to strive to avoid rendering constitutional rulings unless absolutely necessary.").

an alleged onset date of January 1, 2013. (R. at 75.) The Social Security Administration ("SSA") denied Plaintiff's claim initially on October 6, 2015, and again upon reconsideration on February 11, 2016. (R. at 75-84, 107-13.) Plaintiff requested a hearing before an ALJ, and the hearing was held on October 24, 2017. (R. at 35-74.) At the hearing, Plaintiff amended the alleged onset date to October 23, 2015. (R. at 10.) On January 25, 2018, the ALJ issued a written opinion, denying Plaintiff's claim and concluding that Plaintiff did not qualify as disabled under the Act. (R. at 10-19.) On March 27, 2018, Plaintiff requested review of the ALJ's decision, and on April 22, 2019, the SSA Appeals Council denied this request, rendering the ALJ's decision as the final decision of the Commissioner of Social Security ("Commissioner"). (R. at 1-3, 172-74.) Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, a court "will affirm the Social Security Administration's disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015) (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)). Substantial evidence requires more than a scintilla but less than a preponderance, and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Indeed, "the substantial evidence standard 'presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'" *Dunn v. Colvin*, 607 F. App'x. 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)). To determine whether substantial

evidence exists, the court must examine the record as a whole, but may not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (alteration in original) (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)).

In considering the decision of the ALJ based on the record as a whole, the court must take into account "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). If substantial evidence in the record supports the ALJ's findings as to any fact, it is binding on the reviewing court regardless of whether the court disagrees with such findings. *Hancock*, 667 F.3d at 476. "A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). If substantial evidence in the record does not support the ALJ's determination or if the ALJ has made an error of law, the court must reverse the decision. *See id*.

SSA regulations set forth a five-step process that the agency employs to determine whether disability exists. 20 C.F.R. § 404.1520(a)(4); *see Mascio*, 780 F.3d at 634-35 (describing the ALJ's five-step sequential evaluation). At step one, the ALJ looks at the claimant's current work activity. § 404.1520(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. § 404.1520(a)(4)(ii). Step three requires the ALJ to determine whether the medical impairments meet or equal an impairment listed in the regulations. § 404.1520(a)(4)(iii). Between steps three and four, the ALJ must assess the claimant's residual functional capacity ("RFC"), accounting for the most that the claimant can do despite her physical and mental limitations. § 404.1545(a). At step four, the ALJ assesses whether the claimant can perform her past work given her RFC. § 404.1520(a)(4)(iv). Finally, at step five, the ALJ

determines whether the claimant can perform any work existing in the national economy. § 404.1520(a)(4)(v).

### III. THE ALJ'S DECISION

On October 24, 2017, the ALJ held a hearing during which Plaintiff, represented by counsel, and a vocational expert ("VE") testified. (R. at 35-74.) On January 25, 2018, the ALJ issued a written opinion, finding that Plaintiff did not qualify as disabled under the Act. (R. at 10-19.)

The ALJ followed the five-step evaluation process established by the Act in analyzing Plaintiff's disability claim. (R. at 11-19.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity from her alleged onset date of October 23, 2015 through her date last insured, March 31, 2017. (R. at 12.) The ALJ therefore concluded that Plaintiff met her burden at step one of the sequential evaluation process. At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: degenerative disc disease, COPD, obstructive sleep apnea, osteoarthritis, diabetes and obesity. (R. at 13.) At step three, the ALJ determined that none of these impairments, individually or in combination, met or equaled a disability listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 13-14.)

After step three, the ALJ determined Plaintiff's residual functional capacity based on an evaluation of the evidence, including Plaintiff's testimony and the findings of treating and examining health care providers. (R. at 14-19.) Based on this evidence, the ALJ determined that Plaintiff retained the ability to perform light work with the following limitations:

> She could frequently climb ramps and stairs and stoop. She could occasionally climb ladders, ropes, and scaffolds. She had no limits in balancing, kneeling, crouching, and crawling. She could perform no work requiring exposure to poor ventilation or pulmonary irritants such as fumes, odors, dusts, and gases.

(R. at 14.) Based on this determination, the ALJ then considered, at step four, whether Plaintiff could perform her past relevant work. In making this determination, the ALJ determined that Plaintiff's past work as a "fresh food manager" at Wawa was classified as a "department manager" under DOT 299.137-010, and her work as a "shift manager" at Sheetz included work as a "department manager" under DOT 299.137-010 and as a "cashier" under DOT 211.462-014. (R. at 17.) Although the ALJ concluded that Plaintiff could not perform her past relevant work as a department manager, she concluded that Plaintiff could perform past relevant work as a cashier. (R. at 17.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act.

Nevertheless, the ALJ went on to step five and made an alternative finding, considering whether Plaintiff could perform jobs existing in significant numbers in the national economy. The ALJ determined, separately from her step four conclusion, that Plaintiff acquired work skills from past relevant work that were transferable to the representative occupation of telephone solicitor with jobs existing in significant numbers in the national economy. (R. at 18.) Accordingly, the ALJ concluded that Plaintiff did not qualify as disabled under the Act. (R. at 19.)

## IV. ANALYSIS

Plaintiff's appeal to this Court alleges that the ALJ committed legal error at step four and five of the sequential analysis. Plaintiff first argues that the ALJ erred in finding that Plaintiff could perform her past relevant work as it is generally performed in the national economy. (Pl.'s Mem. at 3.) Specifically, she contends that her past work at Sheetz should have been considered a composite job, as it involved the combined duties of more than one position. (Pl.'s Mem. at 3-4.) Second, Plaintiff argues that the ALJ erred in determining that Plaintiff's skills were transferable to another occupation that existed in significant numbers in the national economy. (Pl.'s Mem. at

4.) Additionally, Plaintiff argues that the ALJ was not properly appointed under the Constitution and the ALJ therefore lacked legal authority to hear and decide the case. (Pl.'s Mem. at 7.)

For the reasons set forth below, the Court finds that the ALJ erred at step four in determining that Plaintiff could return to her past relevant work and in her alterative finding at step five that Plaintiff's skills were transferable to other occupations with jobs existing in the national economy. Given the ALJ's failure to clarify ambiguities in the record relating to step four and five of the sequential analysis and failure to apply the appropriate test or otherwise properly explain her conclusions, the Court is unable to meaningfully review the ALJ's decision. Having found error, the Court recommends remand.

### A.     The ALJ Erred in Finding that Plaintiff Could Perform Her Past Relevant Work.

Plaintiff first argues that the ALJ erred in finding that Plaintiff could perform her past relevant work at step four, because Plaintiff could not perform all of the duties required for that past work. (Pl.'s Mem. at 3-4.) Specifically, Plaintiff contends that her previous position at Sheetz qualifies as a composite job since it required the performance of significant elements of two jobs. (Pl.'s Mem. at 4.) According to Plaintiff, therefore, the ALJ should have considered the demands of all components, not just the lightest one. (Pl.'s Mem. at 4.) Defendant responds that the ALJ did not find that Plaintiff's past work as a shift manager was a composite job and that Plaintiff failed to demonstrate that she could not perform her past relevant work. (Def.'s Mot. Summ. J. & Br. in Supp. Thereof at 10-11, ECF No. 16 ("Def.'s Mem.").)

At step four of the sequential analysis, the ALJ must assess the claimant's RFC and past relevant work to determine if the claimant is able to perform the tasks of her previous employment. 20 C.F.R. § 404.1520(a)(4)(iv). This determination applies not only to the claimant's ability to perform her specific previous job, but also to her ability to return to the general work that she

performed in the past. SSR 82–61, 1982 WL 31387 (Jan. 1, 1982); *see also* § 404.1520(f) (asking whether the claimant can perform the "kind of work" previously done). The inquiry therefore concentrates "on the claimant's capacity to perform a type of activity rather than his ability to return to a specific job or to find one exactly like it." *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995). In fact, the ALJ should find the claimant not disabled if she can perform her "past relevant work as [s]he performed it in the past *or* as it is generally required by employers in the national economy." *Id.* at 1207 (citing SSR 82-61).

In assessing Plaintiff's ability to perform her past relevant work, the ALJ may rely on the general job categories of the *Dictionary of Occupational Titles* ("DOT") as presumptively descriptive of a claimant's prior work. *See* SSR 82-61 ("The . . . DOT descriptions can be relied upon — for jobs that are listed in the DOT — to define the job as it is usually performed in the national economy."). Further, agency rulings specifically contemplate "that some individual jobs may require somewhat more or less exertion than the DOT description." *Id.* Even though the ALJ may rely on the general job categories in the DOT, "the claimant may overcome the presumption that the [DOT's] generalization applies by demonstrating that [her] duties were not those envisaged by the framers of the [DOT's] category." *DeLoatche v. Heckler*, 715 F.2d 148, 151 (4th Cir. 1983).

A single DOT categorization may not, however, always apply. When a job does not fit into a single DOT category, it may be a composite job and additional analysis is necessary. A composite job has "significant elements of two or more occupations and, as such, [has] no counterpart in the DOT." SSR 82-61. The SSA's Program Operations Manual System ("POMS")[5] sets forth the

---

[5]   POMS is an internal agency document used by SSA employees to process claims. *Parker for Lamon v. Sullivan,* 891 F.2d 185, 189 n.4 (7th Cir. 1989) (citing *Schweiker v. Hansen,* 450 U.S. 785, 790 (1981)). POMS is binding on the ALJs. SSR 13–2p ("We require adjudicators at all levels of administrative review to follow agency policy . . . and other instructions, such as the Program Operations Manual System (POMS) . . . .").

inquiry that an ALJ must undertake when assessing a possible composite job at step four. POMS § DI 25005.020B. According to the POMS, the claimant may have performed a composite job when an accurate description of the main duties of the work includes multiple DOT occupations. *Id*. When the ALJ determines that the claimant's past work constitutes a composite job, the ALJ must explain why. *Id.* Furthermore, the ALJ should not evaluate the job using the "as generally performed in the national economy" test in the regulations. *Id.* Importantly, the claimant retains the capacity to perform the composite job "only if [she] can perform all parts of the job." *Id.*

Further, the regulations provide that the ALJ may use the services of a VE when determining the demands of Plaintiff's past relevant work and whether her residual functional capacity allows her to perform such work. § 404.1560(b)(2) ("We may use the services of vocational experts or vocational specialists, . . . to obtain evidence we need to help us determine whether you can do your past relevant work, given your residual functional capacity."). Moreover, the test for evaluating Plaintiff's past relevant work experience is not whether she may perform the heightened demands of her actual position, but the demands as generally required by employers throughout the economy. SSR 82-61. "[I]f the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be 'not disabled.'" *Id.*

Although the Fourth Circuit has not further analyzed an ALJ's obligation in considering a composite job, several other district courts have done so. For example, in *Lewis v. Saul*, which is analogous to the present case, the VE testified that the claimant's work broke down into two DOTs, a warehouse worker and a marker/tagger. No. 1:17CV1115, 2020 WL 33118, at *4 (M.D.N.C. Jan. 2, 2020). The VE characterized the marker/tagger position to be a "sub-point" of the claimant's

9

more general position as a warehouse worker, and the ALJ subsequently found that the claimant could perform the marker/tagger position. *Id.* The court remanded the case, explaining that the ALJ had simply pulled out the marker/tagger position from the warehouse position, failing to determine whether one position best matched the plaintiff's work duties, and improperly found the plaintiff capable of performing only the least demanding job. *Id.*

Similarly, in *Jones v. Colvin*, the plaintiff testified about only one previous job, a position with a construction company that included the following duties: flagger; manual labor; running a backdump vehicle, off-road dump truck and packing machine; blowing hay; and picking up items. Civil No. 3:15cv195 (MHL), 2016 WL 786626, at *4 (E.D. Va. Feb. 4, 2016). Similar to the instant case, when asked to classify this position, the VE in *Jones* listed two DOTs. *Id.* ("The VE had only one job to describe, but she did so using two different DOT classifications."). The court remanded, concluding that the ALJ erred by failing to consider whether the plaintiff's past job was a composite job, by picking the least demanding part of the plaintiff's job and by generally failing to explain his decision. *Id.* at *4-5. Other courts have reached similar results. *Plumb v. Astrue*, C/A No. 8:10-cv-03090-RBH, 2012 WL 768058, at *6 (D.S.C. March 7, 2012) (remanding after the VE testified that work broke down into two DOTs); *Shealy v. Colvin,* No. 8:13-2383-RMG, 2015 WL 467726, at *12 (D.S.C. Feb 4, 2015). However, where a claimant clearly testifies that a lighter DOT constitutes the main part of her past work, substantial evidence may support an ALJ's decision despite a plaintiff's argument that she had a composite job. *Miles v. Astrue*, C/A No. 8:07-3164-RBH, 2009 WL 890651, at *11-13 (D.S.C. March 30, 2009).

Finally, the ALJ has a duty to clearly explain her decision when finding a claimant not disabled at step four. SSR 82-62, 1982 WL 31386 (Jan. 1, 1982). The ALJ's explanation acts as a "necessary predicate to engaging in substantial evidence review." *Radford v. Colvin,* 734 F.3d 288,

295 (4th Cir. 2013). That is, the "record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Id*. When the reviewing court has no way to evaluate the basis of the ALJ's decision, the court should "remand to the agency for additional investigation or explanation." *Id.*; *Jones*, 2016 WL 786626, at *4 (applying the duty "to clearly explain" at step four).

In the instant case, Plaintiff testified she had two prior jobs relevant here: a fresh food manager at Wawa from 2001 to 2008 and a shift manager at Sheetz from 2008 to 2011. (R. at 44, 50-53, 205.) The VE initially testified that the fresh food manager position at Wawa would be classified as a department manager. (R. at 54 (referencing DOT 299.137-010).) The VE then went on to testify, however, that the "other work at Wawa would be a cashier checker." (R. at 55 (referencing DOT 211.462-014).) At a later point in the hearing, it being apparent that some confusion existed between the fresh food manager position at Wawa and the shift manager position at Sheetz, the ALJ sought clarification from the VE:

> ALJ: "I have job two as Sheeks [sic] as the shift manager, which he said was cashier checker. . . . And then job three was Wawa as the fresh food manager, which he identified as department manager . . . ."
>
> . . .
>
> ALJ: "But just to check, Mr. Schmitt, the Wawa job, where you identified it as the department manager, was that the fresh food manager position that we were talking about, as she identified it?
>
> VE: "Right. I don't identify occupations by employer. I identify them by job titles. One of the jobs she talked about or listed was a department manager of fresh food. That's department manager."
>
> . . .
>
> ALJ: "And the other one where she identified it as shift manager, you classified it as cashier checker. Did I understand correctly?"
>
> VE: "Right."

11

(R. at 60-61.)

Despite the above testimony, the ALJ, in her written decision, stated that the VE classified both the fresh food manager position at Wawa and the shift manager position at Sheetz as "department manager" positions. (R. at 17.) The ALJ found that the department manager position is considered skilled work performed at a medium exertional level and the shift manager position is classified as semi-skilled work performed at a light exertional level. (R. at 17.) The ALJ concluded that, while the department manager work "cannot be performed within the claimant's residual functional capacity, her work as a 'shift manager' included work as a cashier," and that her work as a cashier qualified as past relevant work. (R. at 17.) The ALJ reasoned that, given Plaintiff's RFC for light work, Plaintiff could perform her past work as a cashier as it is generally performed, despite the fact that Plaintiff actually performed the past cashier work at the medium level. (R. at 17.)

The ALJ should have considered whether Plaintiff's past work at Sheetz constituted a composite job. She also should have accompanied that consideration with an explanation, especially given the confusion in the testimony and record. Similar to the cases above, the ALJ used two different DOT classifications to characterize one prior position, the shift manager position at Sheetz. (R. at 17.) But the ALJ failed to consider whether the Sheetz position was a composite job. If she decided it was a composite job, she erred by picking the least demanding exertional level and comparing it to Plaintiff's RFC. Alternatively, she may have determined that it did not constitute a composite job based upon information in the record. But again, the ALJ did not offer an explanation for that decision. Additionally, she offered no explanation for how she reconciled the differences between the VE's testimony that the Sheetz position was characterized as a cashier checker and her ultimate conclusion that the position was characterized as both a

department manager and a cashier checker. Again, this conclusion may be supported by information in the record, but no explanation was offered reconciling the inconsistency.

As a result, the Court is unable to meaningfully review the ALJ's decision with respect to Plaintiff's past work. The Court cannot determine whether the work constitutes a composite job, nor will the Court guess as to the basis for the ALJ's determination. *See Pearson v. Colvin,* 810 F.3d 204, 211 (4th Cir. 2015) (refusing to guess as to how the ALJ resolved an apparent conflict between the DOT and the VE's testimony); *Mascio,* 780 F.3d at 637 (same). Therefore, the Court finds that the ALJ erred in finding that Plaintiff could perform her past relevant work.

**B.      Substantial Evidence Does Not Support the ALJ's Transferability Analysis at Step Five.**

Although the ALJ concluded at step four that Plaintiff could perform her past relevant work, and was therefore not disabled, she went on to include an alternative finding at step five of the sequential evaluation process, finding that Plaintiff could perform other work existing in significant numbers in the national economy. (R. at 18.) Plaintiff also challenges this finding, arguing that the ALJ's skills transferability analysis ran afoul of the heightened vocational adjustment rules, including Rule 202.00(c), which states that

> for individuals of advanced age who can no longer perform vocationally relevant past work and . . . who have only skills that are not readily transferable to a significant range of semi-skilled or skilled work that is within the individual's functional capacity . . . the limitations in vocational adaptability represented by a functional restriction to light work warrant a finding of disabled.

20 C.F.R. Pt. 404, Subpt. P, App. 2, Rules 202.00(c). Plaintiff alleges that the ALJ failed to apply the correct legal standard, arguing "there is nothing in the decision that indicates that the ALJ used the special vocational adjustment rules." (Pl.'s Mem at 5.) Plaintiff further contends that the ALJ erred in two respects relevant to Rule 202.00(c). First, Plaintiff argues the ALJ never found that Plaintiff's skills were "readily transferable." (Pl.'s Mem. at 4-5.) Second, because her skills were

transferable only to a telephone solicitor position, Plaintiff contends that this single position could not satisfy the "significant range of semi-skilled or skilled work" requirement imposed under the Rule. (Pl.'s Mem. at 4-5.) Defendant responds that substantial evidence supports the ALJ's transferability analysis. (Def.'s Mem. at 12.)

At the fifth step of the sequential analysis, the ALJ must show that, considering the claimant's age, education, work experience and RFC, the claimant could perform other work existing in significant numbers in the national economy. §§ 404.1520(g), 404.1566. The ALJ can carry her burden in the final step with the testimony of a VE.[6] § 404.1566(e). VE testimony may assist the ALJ in determining a claimant's "[s]kills, level of skills and potential occupations to which skills from [past relevant work] may be transferred." SSR 82-41, 1982 WL 31389 (Jan. 1, 1982).

The ALJ may also use the Medical Vocational Guidelines ("Grids") to meet her burden of proving that significant numbers of jobs exist in the national economy. *Coffman,* 829 F.2d at 518 (citing *Heckler v. Campbell*, 461 U.S. 458, 461 (1983)). The Grids categorize jobs by their physical exertion requirements,[7] namely, sedentary, light, medium, heavy and very heavy. *See* SSR 83-10, 1983 WL 31251 (Jan. 1, 1983). Using the claimant's RFC, the ALJ references the table that corresponds to the claimant's exertional limits. SSR 83-10; 20 C.F.R. Pt. 404, Subpt. P, App. 2. Next, based on the claimant's age, education and previous work experience, the applicable table

---

[6]  During an administrative hearing, the ALJ must pose hypothetical questions to the VE that accurately represent the claimant's RFC, so that the VE can offer testimony about any jobs existing in the national economy that the claimant could perform. These hypothetical questions help the ALJ determine the claimant's level of disability and potential for employment. *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989).

[7]  A claimant's exertional limitations determine the proper exertional level for the claimant's situation. *See* SSR 83-10. An exertional limitation is "[a]n impairment-caused limitation which affects one's capability to perform an exertional activity" (strength activity) such as sitting, standing, walking, lifting, carrying, pushing and pulling. SSR 83-10.

directs a finding of "disabled" or "not disabled." *Hicks v. Astrue*, No. 3:08CV758, 2009 WL 2421443, at *12 (E.D. Va. July 30, 2009).[8]

For an individual, like Plaintiff, who is of "advanced age" with a maximum sustained work capability of light work and has at least graduated high school — but with education that does not provide for direct entry into skilled work — a finding of disabled or not disabled turns on the transferability of the individual's skills. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 2, Rule 202.06, Rule 202.07. Rule 202.06 directs a finding of "disabled" where a claimant has previous skilled or semi-skilled work experience but those skills are "not transferable." 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 2, Rule 202.06. Rule 202.07 directs a finding of "not disabled" where previous skills are transferable. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Table 2, Rule 202.07. However, Rule 202.07 includes a footnote instructing reference to Rule 202.00(c), which indicates that for a claimant of advanced age who can no longer perform vocationally relevant past work and has skills "that are not readily[9] transferable to a significant range of semi-skilled or skilled work that is within the individual's functional capacity, or who [has] no work experience," a finding of disabled is warranted. 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 202.00(c).

A claimant is considered to have transferrable skills that can be used in other jobs "when the skilled or semi-skilled work activities [the claimant] did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work." § 404.1568(d)(1). A claimant acquires transferrable skills through "work experience or through

---

[8]     The guidelines do not, however, take into account non-exertional limitations, such as pain, postural limitations and pulmonary impairment. *Coffman*, 829 F.2d at 518. When non-exertional limitations, as listed above, occur in conjunction with exertional limitations, "the guidelines are not to be treated as conclusive." *Id*.

[9]     Although the term "readily transferable," is undefined by statute, regulation or case law, Merriam-Webster defines "readily" to mean "without much difficulty; easily." Meriam-Webster's Collegiate Dictionary (11th ed. 2020).

education providing for direct entry into skilled work." *Ingle v. Heckler*, 763 F.3d 169, 170 (4th Cir. 1985); *see Blake v. Sec'y of Health and Human Servs.*, 528 F.Supp. 881, 885 (E.D. Mich. 1981) (differentiating between "skill" and "aptitude"). Where transferability is at issue for a claimant of advanced age, transferability is most probable and meaningful among jobs in which:

> (1) the same or a lesser degree of skill is required, because people are not expected to do more complex jobs than they have actually performed (i.e., from a skilled to a semiskilled or another skilled job, or from one semiskilled to another semiskilled job);
>
> (2) the same or similar tools and machines are used; and
>
> (3) the same or similar raw materials, products, processes or services are involved.
>
> A complete similarity of all these factors is not necessary. There are degrees of transferability ranging from very close similarities to remote and incidental similarities among jobs.

§ 404.1568(d). Moreover, in determining whether skills are transferable to other jobs, "close attention must be paid to the actual complexities of the job in dealing with data, people, or objects and to the judgments required to do work." SSR 82-41. Semi-skilled occupations are more complex than unskilled occupations and contain "more variables and require more judgment than do unskilled occupations." *Id.*

Especially relevant here, advancing age is an increasingly limiting factor in a claimant's transferability, as it "significantly affects a person's ability to adjust to other work." § 404.1563(a), (e). This is because "[a]t an advanced age, a person has little time to learn a new skill and apply it to a new job," especially when that person's work is limited by a medical disability. *Weaver v. Sec'y of Health and Human Servs.*, 722 F.3d 310, 312 (6th Cir. 1983). Moreover, "advancing age decreases the possibility of making a successful vocational adjustment." SSR 82-41. When a claimant is of advanced age, "we review the record for specific findings identifying the claimant's acquired job skills and the positions to which those skills are easily transferable." *Nielson v.*

16

*Sullivan*, 992 F.2d 1118, 1121 (10th Cir. 1993). Advanced age, therefore, heightens the standard to which the ALJ must establish transferability of skills. *See* SSR 82-41.

Similar to the step four analysis, the ALJ must include "adequate rationale and findings" and she must write her decision "so that a clear picture of the case can be obtained. The rationale must . . . show clearly how specific evidence leads to a conclusion." SSR 82–62, 1982 WL 31386 (Jan. 1, 1982). The ALJ's explanation acts as a "necessary predicate to engaging in substantial evidence review." *Radford,* 734 F.3d at 295. When an ALJ fails to adequately explain her reasoning, it precludes the "court from undertaking a 'meaningful review.'" *Id*. at 296. If the reviewing court has no way to evaluate the basis of the ALJ's decision, then the "proper course . . . is to remand to the agency for additional investigation or explanation." *Id.* at 295 (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985)); *see also Mascio*, 780 F.3d at 637 (finding remand necessary because the court was "left to guess about how the ALJ arrived at his conclusions"). Moreover, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman*, 829 F.2d at 517. And while "it serves no purpose to require every step of each decisional process to be enunciated with precise words and phrases drawn from relevant disability regulations . . . . it is necessary to assure that the correct legal standard was applied." *Renner v. Heckler*, 786 F.2d 1421, 1424 (9th Cir. 1986).

Here, the ALJ determined that, at step five, "a finding of 'not disabled' is appropriate under the framework of Medical-Vocational Rule 202.07." (R. at 19.) The ALJ found that Plaintiff had at least a high school education, performed past relevant work at both skilled and semi-skilled levels and had the residual functional capacity to perform light work. (R. at 14, 18.) Regarding the transferability of Plaintiff's skills from past work, the ALJ concluded that Plaintiff had acquired the following skills from her past work as a cashier — "sales, customer service and basic

17

information entry and retrieval." (R. at 18.) The ALJ further found as follows:

> The vocational expert was asked whether there were occupations that could be performed by an individual having the same age, education, past relevant work experience, and residual functional capacity as the claimant had through the date last insured. The vocational expert responded and testified that representative occupations such an individual could have performed include telephone solicitor (DOT 299.357-014), which is considered sedentary work with an SVP of three and 200,000 positions in the national economy. This work does not require skills which the claimant did not acquire through her past relevant work, and the acquired skills have not eroded over time.

(R. at 18.)

Although the ALJ's opinion generally considers the issue of transferability of skills, it is deficient in several respects. First, the confusion surrounding and conflation of Plaintiff's past relevant jobs at step four continues to taint the ALJ's transferability analysis at step five. Specifically, although the ALJ identifies the specific skills that Plaintiff can transfer from her past work, she attributes those skills to Plaintiff's work as a cashier. (R. at 18.) The VE, however, testified that those skills were obtained as part of the department manager position. (R. at 69.) While such an error may be viewed as simply an oversight, it is significant here because it is indicative of the ALJ's failure to pay "close attention . . . to the actual complexities of the job in dealing with data, people or objects and to the judgments required to do the work." SSR 82.41(d). Simply put, the Court cannot conclude that the ALJ adequately considered whether the skills obtained in Plaintiff's past jobs were readily transferable to other work where an insufficient foundation was laid regarding Plaintiff's past work.

Further, the ALJ's failure to discuss Plaintiff's advanced age or conduct a transferable skills analysis in conformity with the regulations prevents this Court from meaningfully reviewing the ALJ's decision. *See Renner*, 786 F.2d at 1424. While it is clear that "complete similarity" among the transferability factors listed above is not necessary, certainly the ease and ability of

18

Plaintiff to transfer her skills to a new position is a key component of the inquiry meriting consideration and discussion.[10] *See* § 404.1568(d)(3) (indicating that where skills are not "readily usable" in other industries, they are not transferable); 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rule 202.00(c) (requiring "readily transferable" skills); *Payne v. Sullivan*, 946 F.2d 1081, 1084 (4th Cir. 1991) (finding the ALJ's analysis sufficient when his reasoning and supporting facts corresponded to the factors in the regulations and the factors a claimant would rely on in rebutting the presumption). During the hearing, the ALJ and VE did not discuss the effect of Plaintiff's advanced age on her ability to learn or perform the telephone solicitor occupation. (R. at 67-72.) While the ALJ observed that Plaintiff was 55 years old, "which is defined as an individual of advanced age," the ALJ did not otherwise discuss, either during the hearing or in her decision, Plaintiff's advanced age or ability to adjust from one position to another in her transferability discussion. (R. at 18.)

The hearing transcript and testimony of the VE further reflects that, although the ALJ considered transferability generally, her analysis did not include an inquiry into the ease to which Plaintiff's skills could transfer into a new occupation. (R. at 67-72.) While the VE testified that Plaintiff could likely learn the telephone solicitor occupation in "31 to 90 days" and that the occupations of department manager and telephone solicitor are a "close vocational match," there was no further discussion regarding the effect of Plaintiff's advanced age on her learning or

---

[10] Although there was a limited discussion of the factors during the hearing, that discussion related to Plaintiff's past work as a department manager, not the cashier position ultimately relied upon by the ALJ. (*Compare* R. at 72 (testifying that the telephone solicitor occupation is "at the lowest level of skilled work," whereas the department manager required greater skills), *and* R. at 69 (testifying that both positions required sales and customer service skills, along with "very basic information entry and retrieval" skills), *and* R. at 69 (testifying that the skills required as a telephone solicitor were a subpart of the skills required as a department manager), *with* R. at 18 (ALJ finding that skills were transferable from cashier position).)

19

whether Plaintiff could learn a new occupation "readily." (R. at 71-72.) Further, neither the ALJ nor the VE explicitly addressed the applicability of Rule 202.00(c) or whether Plaintiff's skills were *readily* transferable, despite the fact that this is often an area of inquiry when a claimant is of advanced age and either Rule 202.06 or 202.07 might apply. *See Bird v. Berryhill*, Civil Action No. 17-1785-CJB, 2019 WL 1568519, at *12 (D. Del. Apr. 10, 2019) (discussing the VE's use of "readily transferable" in his testimony, including statements that the plaintiff's skills would be "highly and readily transferable" and ultimately finding the ALJ's "decision about transferability of skills to be supported by substantial evidence"); *Brown v. Bowen*, 682 F. Supp. 858, 860 (W.D. Va. 1988) (discussing the Appeals Council's remand order, which gave the ALJ discretion to summon a VE to provide testimony on whether the claimant's skills were "readily transferable"); *Edwards v. Colvin*, C/A No. 5:15-1197-BHH-KDW, 2016 WL 8671896, at *2 (D.S.C. Apr. 15, 2016) (citing the ALJ and VE's discussion of "readily transferrable skills" during the hearing), *report and recommendation adopted*, No. 5:15-CV-01197-BHH, 2016 WL 3097395 (D.S.C. June 3, 2016).

Given Plaintiff's advanced age, the ALJ should have more carefully developed the record regarding Plaintiff's past work, clarified the ambiguities in the record and carefully considered Plaintiff's transferable skills in light of the guidance set forth in the Grids and other regulations. *See* §§ 404.1563, 404.1569; SSR 82-41. While "it serves no purpose to require every step of each decisional process to be enunciated with precise words and phrases drawn from relevant disability regulations . . . . it is necessary to assure that the correct legal standard was applied." *Renner*, 786 F.2d at 1424. The ALJ, therefore, must at least "acknowledge that a more stringent test is being applied which takes into consideration [the claimant's advanced] age." *Id.* Having failed to do so,

or to provide a wholesome explanation, the Court is unable to meaningfully review the ALJ's decision regarding Plaintiff's transferable work skills.

Accordingly, substantial evidence does not support the ALJ's transferability analysis.[11] For the foregoing reasons, the Court recommends reversal and remand for further development of the record.

## V. CONCLUSION

For the reasons set forth above, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 14) be GRANTED, that Defendant's Motion for Summary Judgment (ECF No. 16) be DENIED and the final decision of the Commissioner be VACATED and REMANDED pursuant to the fourth sentence of 42 U.S.C. § 405(g).

---

[11]    Plaintiff also argues that the ALJ's transferability analysis was defective because the VE identified only one occupation — telephone solicitor — as a representative occupation that existed in significant numbers, despite the Grids' requirement that a "significant range" of semi-skilled or skilled work be available to claimants such as Plaintiff under Rule 202.00(c). (Pl.'s Mem. at 7.) Plaintiff argues that a "significant range" necessarily requires more than one occupation. (Pl.'s Mem. at 6-7 (citing *Lounsburry v. Barnhart*, 468 F.3d 1111 (9th Cir. 2006).) Defendant fails to respond substantively to Plaintiff's argument. Although the Fourth Circuit has yet to address this issue, several district courts have considered the matter, with differing results. *See, e.g.*, *Collis v. Colvin*, 204 F. Supp. 3d 1046, 1056 (S.D. Iowa 2016) (finding that, since the VE only identified one job to which the plaintiff's skills would transfer, the ALJ did not meet her burden to prove that a significant range of occupations existed); *Blackmon v. Astrue*, Civil Action No. 11-1509, 2012 WL 3253157, at *4-5 (W.D. La. July 11, 2012) (finding "significant range" to include "at least several other identified occupations"); *Morris v. Colvin*, Civil Action No. 4:15-CV-284, 2016 WL 4523238, at *4-5 (E.D. Tex. Aug. 30, 2016) (noting the lack of a "bright-line standard" but finding *Lounsburry* to be inapposite since it addressed light work, not sedentary work); *Valentine v. Colvin*, Civ. Action No. 13-2026-GMS, 2015 WL 9855463, at *4 (D. Del. Jan. 19, 2015) (finding *Lounsburry* to be inapplicable because the ALJ identified three occupations in her decision, not just one); *Hobbs v. Berryhill*, Civil No. 17-619(FLN), 2018 WL 3999582, at *12 (D. Minn. Aug. 21, 2018) (explaining that, since the VE identified two occupations for the plaintiff, the ALJ did not err by stating that the jobs identified by the VE constituted a significant range). Although potentially dispositive, given that the Court recommends remand based on the ALJ's failure to adequately consider the relevant regulations and to explain her decision at step five, this issue should first be properly addressed by the ALJ.

Let the Clerk file a copy of this Report and Recommendation electronically, notify all counsel of record and forward a copy to United States District Judge M. Hannah Lauck.

**NOTICE TO PARTIES**

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a de novo review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/

Elizabeth W. Hanes
United States Magistrate Judge

Richmond, Virginia
Date: August 17, 2020

22